UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

KARL ALAN WHITE,

    Petitioner,

v.

D. BERKBILE, *Warden*,

    Respondent.

Civil Action No. 7:11-00048-KSF

**MEMORANDUM OPINION AND ORDER**

\*\*\*\*\* \*\*\*\*\* \*\*\*\*\* \*\*\*\*\*

Karl Alan White, confined in the United States Penitentiary-Big Sandy ("USP-Big Sandy"), located in Inez, Kentucky, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, [R. 2]. White challenges his security classification status and seeks a transfer to a correctional institution with a lower security level. He has paid the $5.00 filing fee.

The Court reviews the § 2241 petition to determine whether, based on the face of the petition and any exhibits attached thereto, White is entitled to relief. *See* Rule 4, Rules Governing 28 U.S.C. § 2254 Cases; (applicable to § 2241 petitions under Rule 1(b)). *See*, *e.g.*, *Patton v. Fenton*, 491 F.Supp. 156, 158-59 (M.D. Pa. 1979)*; see also* 28 U.S.C. § 2243. A district court may summarily dismiss a petition if it appears from its face that the petitioner is not entitled to relief. *See* 28 U.S.C. § 2243; *Blevins v. Lamanna*, 23 F. App'x 216, 218 (6th Cir. 2001); *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970).

For the reasons set forth below, the Court will deny White's § 2241 petition and dismiss this proceeding without prejudice for his failure to exhaust applicable administrative remedies.

## WHITE'S CRIMINAL HISTORY

In September 2007, a jury convicted White of seven federal drug and firearm offenses and on November 2, 2007, White received a life sentence as to Counts 1 and 5 of the Indictment; fifty (50) years as to Counts 2, 4 and 6; sixty (60) months as to Count 3; and sixty (60) months as to Count 6. *See United States v. White*, No. 1:07-CR-00029-RHB (W. D. Mich.) [R. 130].

## ALLEGATIONS OF THE PETITION

Prior to his transfer to USP-Big Sandy in 2010, White was confined in the United States Penitentiary-Hazelton ("USP-Hazelton"), located in Bruceton Mills, West Virginia. White alleges that because USP-Hazelton officials "fraudulently" assigned him a greater security management variable than was warranted, he was transferred to USP-Big Sandy, which he indicates is a higher security federal prison than USP-Hazelton. [R. 2-2, p. 6]. White alleges that officials in the Bureau of Prisons ("BOP") Designation and Sentence Computation Center ("DSCC"), located in Grand Prairie, Texas, neglected to review his record and correct his classification prior to his transfer from USP-Hazelton, and that USP-Sandy Warden Berkebile committed "misfeasance" by not rejecting his transfer to USP-Big Sandy and failing to explain to USP-Hazelton officials that he should not have been transferred. [*Id*.].

White alleges that he is exposed to a more violent atmosphere at USP-Big Sandy, specifically, prison gangs, and that USP-Big Sandy officials have abused their discretion by refusing to explain or document their reasons for keeping him there. [R. 2, p.3; R. 2-2, p. 6].[1] He claims that the geographic separation from his family constitutes "unwarranted cruelty on

---

[1] White alleges, however, that he "has already been the victim of gang violence at a previous USP. . . ." *See* Petition, [R. 2, p. 3].

2

myself that has resulted in a sentence greater than necessary. I'm being deprived of my liberty interest, by being placed in this harsh institution . . . ." [R. 2-2, p. 6.]. White further argues that the Constitution grants him the right to be "free from being assaulted or excessive force used." [*Id*., p. 7]. White seeks an Order directing the BOP to transfer him to "a lower security federal prison in the State where the commercial crimes were committed." [R. 2, p. 3].

### WHITE'S EXHAUSTION EFFORTS

In early October 2010, White submitted to USP-Big Sandy staff a "Request for an Informal Resolution," objecting to his security classification and arguing that it should be a "14." [R. 2-1, pp. 2-4]. White's Counselor responded that a "greater security management variable" had been placed on him until August 11, 2011; that White would not be transferred until that date; and that White should read BOP Program Statement ("PS") 5100.08, *Management Variables*, which the Counselor attached to the response. *Id.*, p. 2.

White submitted a BP-9 "Request for Administrative Remedy," challenging (1) his security classification based on the Management Variable which his USP-Hazelton Case Manager and the DCSS had applied to him, and (2) his transfer to USP-Big Sandy.[2] *See* R. 2-2, pp. 5-7. White contends that he submitted his BP-9 Remedy Request on October 7, 2010.

---

[2] The BOP has a multi-tiered administrative remedy process through which a federal inmate may seek a remedy regarding his confinement. *See* 28 C.F.R. § § 542.10-542.19. Section 542.13(a) demands that an inmate first informally present his complaint to the staff, thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request (a BP-9 form) to the Warden. *See id*. § 542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal by filing a BP-10 form with the Regional Director, and if the inmate is not satisfied with the Regional Director's response, he may appeal by filing a BP-11 form with the Office of General Counsel. *See id*. § 542.15 (a)-(b).

On November 1, 2010, the USP-Big Sandy Administrative Remedy Coordinator issued a "Receipt," identifying White's BP-9 Remedy Request as Remedy No. 613191-F1, stating that the Remedy Request was received on October 29, 2010, and informing White that the Warden's Response would be due on November 18, 2010. *Id.*, p. 8.[3]

The next day, November 2, 2010, White submitted his BP-10 Appeal to the BOP Mid-Atlantic Regional Office ("MARO"), *see id.*, p. 9, despite the Administrative Remedy Coordinator's November 1, 2010, notice which clearly stated that a response to White's BP-9 Remedy Request was not due until November 18, 2010. White stated in his November 2, 2010, BP-10 Appeal that "The Warden, [D. Berkebile], has acquiesced that my liberty right's [sic] and welfare are being violated and jeopardize [sic] by not responding to the BP-229(13) that was submitted to his office on October 7, 2010." *Id*.

On November 23, 2010, the USP-Big Sandy Administrative Remedy Coordinator notified White that it was extending until December 8, 2010, its time for responding to his BP-9 Remedy Request. *See* "Extension of Time for Response," *Id.*, p. 10. On December 22, 2010, White re-submitted his BP-10 Appeal, reiterating the same claims and arguments he had made in his November 2, 2010, filing. *Id.*, p. 11. On December 30, 2010, the MARO rejected White's BP-10 appeal because he had not attached a copy of either his BP-9 Remedy Request or the Warden's response to his BP-9 Remedy Request. *See* "Rejection Notice," *id.*, p. 13.  On that

---

[3]   The Administrative remedy Coordinator listed the subject of this Remedy Request as "Access to Pre-Sentence Investigation Report." *Id*.

4

same day (December 30, 2010), Warden Berkebile denied White's BP-9 Remedy Request (Remedy No. 613191-F1). *Id*.[4]

On January 11, 2011, White wrote a letter to the MARO, arguing that its December 30, 2010, "Rejection Notice" was erroneous. *Id*., p. 14. White stated that Warden Berkebile had improperly listed his BP-9 Remedy Request as "filed" on October 29, 2010, instead of October 7, 2010; that the MARO had not responded to his BP-10 appeals; and that the Warden's December 30, 2010, response was twenty-two days late, having been due on December 8, 2010.

On January 14, 2011, the MARO issued a second "Rejection Notice," again stating that White had failed to attach a copy of either his BP-9 Remedy Request or the Warden's response to his BP-9 Remedy Request. *Id*., p. 16. However, the MARO informed White could re-submit his appeal in the proper form "within ten days of this Rejection Notice." *Id*.

White did not re-submit his BP-10 appeal and attach the requested BP-9 Remedy Request documentation. Instead, on January 19, 2011, he wrote another letter to the MARO, arguing with its January 14, 2011, rejection of his attempted BP-11 appeal(s). *Id*., p. 17. He reiterated that Warden Berkebile had improperly treated his BP-9 Remedy Request as "filed" on October 29, 2010, instead of October 7, 2010, and that the Warden's December 30, 2010, response was twenty-two days late, having been due on December 8, 2010. *Id*. He informed the MARO that:

---

[4] Berkebile concluded that White's Management Variable complied with the PS 5100.08 and warranted his placement in a High Security Level institution. *Id*. Berkebile explained that White's Management Variable was based on his Public Safety Factor ("PSF"), which is comprised of White's criminal history and institutional conduct. *Id*. Berkebile further explained that because White is a male inmate who has more than 30 years remaining to serve, including non-parolable life sentences, he was assigned a PSF "of greatest security" and would be "housed in a High Security Level institution" unless the PSF was waived. *Id*.

5

> Therefore its [sic] the responsibility of your office to authorize my removal
> from Big Sandy to a state and institution where the allege commercial crimes
> were committed to save the court time from deciding an issue that has already
> been decided with evidence presented to your office.

*Id.*

On February 3, 2011, the MARO rejected White's January 19, 2011, letter for five reasons, including but not limited to White's failure to provide either his BP-9 Remedy request or the Warden's response thereto, and his non-compliance with the BOP's specific filing requirements relating to attachments. *See* "Rejection Notice," *id*., p. 18. However, the MARO again informed White could simply re-submit his appeal in the proper form "within ten days of this Rejection Notice." *Id*, [Reason No. 5].

On that same date, the MARO also rejected another BP-10 Appeal which White had filed, which the MARO identified as "Remedy No. 620551-R2," the subject of which was "Transfer-Other." *Id*., p. 19. The MARO stated that White must first file a BP-9 remedy request with the Warden, and further noted in the "Remarks" section that there was no record at the institutional level of White having filed a BP-9 Remedy Request seeking a transfer. *Id*. Still, White did not re-submit this BP-10 appeal as the MARO had suggested, but instead filed a BP-11 Appeal to the BOP Central Office on February 13, 2011. *Id*., pp. 3-4. White filed the instant § 2241 petition on April 7, 2011.

## DISCUSSION

White alleges that he has done all that he is required to do to administratively exhaust his claims. He argues that because Warden Berkebile has interfered with and/or thwarted his exhaustion efforts, the Court should treat his claims challenging his custody classification and

6

transfer to USP-Big Sandy as being fully exhausted and ripe for consideration. The Court disagrees with White's assessment.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, federal courts consistently require federal prisoners to fully exhaust the available administrative remedies within the BOP before filing a petition seeking habeas corpus relief pursuant to § 2241. *Fazzini v. Northeast Ohio Corr. Center*, 473 F.3d 229, 231 (6th Cir. 2006); *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir. 1981) (per curiam). *See also Kendrick v. Carlson*, 995 F.2d 1440, 1447 (8th Cir. 1993); *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir.1998).

Exhaustion promotes a number of desirable goals, including filtering out frivolous claims, giving the agency the opportunity to review its conclusions short of litigation, and developing a full and complete factual record which allows a district court to review the agency's final action. *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988); *Brice v. Day*, 604 F.2d 664 (10th Cir. 1979), *cert. denied*, 444 U.S. 1086 (1980). "Proper exhaustion often results in the creation of an administrative record that is helpful to the court." *Barney v. Correctional Medical Services, Inc.*, 08-CV-00694, 2009 WL 3711612, *12 (W.D. Mich. Nov. 3, 2009).

The USP-Big Sandy Administrative Remedy Coordinator notified White on November 1, 2010, that a response to his BP-9 Remedy Request (No. 613191-F1) was not due until **November 18, 2010**. Because White believed that the Administrative Remedy Coordinator should have treated his BP-9 Remedy Request as having been filed on October 8, 2010, instead of October 29, 2010, (the date reflected in the November 1, 2010, Receipt), he simply ignored the November 1, 2010, time-extension; unilaterally (and improperly) treated the Warden's failure to respond to his BP-9 Remedy request by November 2, 2010, as an "acceptance" of his BP-9

7

Remedy Request; and prematurely submitted his BP-10 Appeal to the MARO on November 2, 2010, and then again on December 22, 2010.

The Supreme Court has held that in order to satisfy the requirement that administrative remedies be exhausted prior to filing suit, those remedies must be exhausted *properly* and within the time frames required by the remedy process. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

Under 28 C.F.R. § 542.18, Warden Berkebile was clearly authorized to extend his original November 18, 2010, response deadline to December 8, 2010, so White's submission of a BP-10 appeal to the MARO on November 2, 2010, was premature and improper. White was not free to disregard the BOP's established procedures, deadlines, and authorized response extensions in order to create his own personal time-table for filing appeals. While it is unclear why Warden Berkebile did not issue his Response until December 30, 2010, the resulting twenty-two day delay is irrelevant and moot. The MARO informed White on both January 14, 2011, and February 3, 2011, that he could remedy his defective and premature appeals by simply re-submitting his BP-10 appeal and attaching the Warden's response, which White had received by both of those dates.

But White refused to do that. Instead, he wrote two letters to the MARO officials, arguing that they had erred, blaming the Warden for the fact that he filed his appeals prematurely, and instructing the MARO about its responsibilities, and then filed a premature BP-11 Appeal to the BOP Central Office on February 13, 2011. Because White prematurely filed

his BP-10 appeal on November 2, 2010, and again on December 22, 2010, prior to the Warden responding to his BP-9 Remedy Request, and because he refused to remedy those errors by simply resubmitting his BP-10 appeal and attaching the Warden's December 30, 2010, response, White has not obtained a response from the MARO and the BOP Central Office. Accordingly, he has not *properly* exhausted the claims in Remedy No. 613191-F1[5] according to the BOP's procedures, and his § 2241 petition is therefore premature.

White must either complete the exhaustion process he started in October 2010, or begin the process from scratch as to his custody classification challenge, his request for a transfer from USP-Big Sandy, and his concerns about potential exposure to gang violence. If followed properly, the entire administrative remedy process takes approximately ninety days. White's Counselor stated that his current management variable would remain in effect until August 11, 2011, which is only ninety days from now. Even if the BOP extended the response time at all levels, the process would most likely take no more than one hundred and sixty days.

White will not be prejudiced by being required to properly exhaust, as he could have easily and expeditiously remedied his defective BP-10 appeal months ago by simply resubmitting it and attaching the Warden's denial of his BP-9 remedy request, which would have put him on the right administrative track. Further, according to the BOP's website, www.bop.gov, White's actual or projected release date is not until January 5, **2038**, over twenty-six years from now. White thus has ample time in which to complete the entire BOP administrative remedy process, from start to finish, as to all of his security classification and transfer challenges.

---

[5] Based on the MARO's other February 3, 2011, "Rejection Notice," it appears that White also failed to administratively exhaust his request seeking a transfer, which he attempted to set forth in Remedy No. 620551-R2. *See* Petition, [R 2-2, p. 19].

Even if White fully had completed the administrative exhaustion process and then sought judicial review, his claims might still fail on the merits. First, White incorrectly alleged that USP-Big Sandy is a higher security level federal prison than USP-Hazelton. According to the "Facility Locator" feature of the BOP's website, www.bop.gov, USP- Hazelton, like USP-Big Sandy, is also a "high security" institution that houses male inmates.

Second, if White seeks a transfer from USP-Big Sandy because of alleged potential gang violence, he must do so in a separate civil action filed under 28 U.S.C. § 1331, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and either pay the $350.00 filing fee or seek pauper status. White cannot seek relief from the conditions of his confinement in a § 2241 petition. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Sullivan v. United States*, 90 F. App'x 862, 863 (6th Cir. 2004).

Third, regardless of whether White files a *Bivens* civil rights action or a § 2241 petition, it is well-settled that prison classifications, assignments, and transfers are functions wholly within the discretion of the BOP. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). Federal prisoners have neither a due process liberty interest in their classification while incarcerated, *see Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976), nor a liberty interest in remaining free from discretionary transfers to less agreeable prisons, *Meachum*, 427 U.S. 215, 225 (1976), or in being housed in a particular institution or a particular part of an institution. *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

Thus, White does not appear to assert a valid claim under either the Fifth Amendment Due Process Clause or the Eighth Amendment's prohibition against cruel and unusual punishment. *See Mader v. Sanders*, 67 F. App'x 869, 871 (6th Cir. 2003) (holding that because

Mader had no due process liberty interest in his placement and classification while incarcerated, neither his due process nor equal protection rights were violated by BOP's refusal to transfer him to another facility with other inmates that had the same custody classification).

Despite these perceived deficiencies, White's § 2241 petition will be dismissed without prejudice to his **properly and timely** submitting his claims to the BOP through the administrative remedy process, 28 C.F.R. § § 542.10- 542.19.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)  Petitioner Karl Alan White's § 2241 petition, [R. 2] is **DENIED;**

(2)  This action is **DISMISSED WITHOUT PREJUDICE** to White asserting his claims through the Bureau of Prisons administrative remedy procedures, 28 C.F.R. § 542. 13-19, and filing a new § 2241 petition if his claims are adversely decided; and

(3)   Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

This May 16, 2011.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge